**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

RAMONA CHAPPEL, :

          Plaintiff,

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

          Defendant. :

Case No. 3:12-cv-080

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

---

**REPORT AND RECOMMENDATIONS**

---

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986).

Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury.  *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988);  *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole.  *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978);  *Houston v. Secretary of Health and Human Services*, 736 F.2d 365  (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984).  However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.  *Garner, supra.*  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion.  *Elkins v. Secretary of Health and Human Services*, 658 F.2d  437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy.  42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act.  42 U.S.C. §1381a.  With

respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the

national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff represents that based on a previous application, the Commissioner determined in March, 1992, that she was disabled due to mental retardation and substance abuse and that in March, 2007, as part of a continuing disability review the Commissioner subsequently found medical improvement and terminated her benefits. See PageID 493. Plaintiff acknowledges she did not appeal that determination. PageID 494.

Plaintiff filed applications for SSD and SSI in September, 2008, alleging disability as of July 25, 2008, due to post-traumatic stress disorder and panic attacks. PageID 121-20; 203. The Commissioner denied Plaintiff's applications initially and on reconsideration. PageID 114-22; 125-30. Administrative Law Judge David Redmond held a hearing, PageID 89-106, following which he determined Plaintiff is not disabled. PageID 64-83. The Appeals Council denied Plaintiff's request for review, PageID 55-57, and Judge Redmond's decision became the Commissioner's final decision. See *Kyle v. Commissioner of Social Security,* 609 F.3d 847, 854 (6th Cir. 2010).

In determining that Plaintiff is not disabled, Judge Redmond found that she has severe history of degenerative joint disease in both knees, history of asthma, major depressive disorder, post-traumatic stress disorder, borderline intellectual functioning, and a history of polysubstance abuse, but that she did not have an impairment or combination of impairments that meets or equals the Listings. PageID 67, ¶ 3; PageID 69, ¶ 4. Judge Redmond also found that Plaintiff has the residual functional capacity to perform a limited range of medium work. PageID 72, ¶ 5. Judge Redmond then used section 203.21 of the Grid as a framework for deciding, coupled with a vocational expert's testimony, and concluded that there is a significant number of jobs in the

economy that Plaintiff is capable of performing. PageID 77, ¶ 10. Judge Redmond concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. PageID 78,¶¶ 11, 12.

The record contains a copy of Plaintiff's school records dated November, 1970, through December, 1977. PageID 285-90. Those records reveal that in November, 1970, when Plaintiff was age twelve years and five months and in the sixth grade, school officials referred her for a psychological evaluation because of behavior problems and possible retardation. *Id.* Testing revealed that Plaintiff had a verbal IQ of 79, performance IQ of 68, and full scale IQ of 71, and that she was functioning within the educable retarded range. *Id.* The psychologist recommended that Plaintiff be placed in special classes for the educable retarded. *Id.* Plaintiff's school records also reveal that over time, Plaintiff's grades ranged between A's and D's. *Id.*

Examining psychologist Dr. Flexman reported on March 5, 1992, that Plaintiff drank two fifths and a twelve-pack a day, used crack four or five times a week, experienced some blackouts, had never been in a treatment program, and that she had a high school education in special education classes. PageID 297-302. Dr. Flexman also reported that Plaintiff was rather disheveled in her appearance, appeared unclean, had a generally tense posture, her facial expressions revealed mild apprehension and decreased variability, her general body movements were restless and fidgety, and her amplitude and quality of speech were slowed and appeared slightly retarded. *Id.* Dr. Flexman noted that Plaintiff was alert and oriented, her attention span was poor, immediate recall was fair, recent memory was slightly decreased, judgment for ordinary daily affairs was poor, insight was limited, she appeared to have a moderately unrealistic degree of concern over her own problems and difficulties, and that she had some obsessive thinking concerning alcohol consumption. *Id.* Dr. Flexman also noted that test results

revealed Plaintiff had a verbal IQ of 65, a performance IQ of 65, and a full scale IQ of 63, she was functioning within the mild range of retardation, and that her reading abilities were within the mild range of retardation at the 3.7 grade level. *Id.* Dr. Flexman identified Plaintiff's diagnoses as polysubstance abuse and mild mental retardation and he assigned her a GAF of 60. *Id.* Dr. Flexman opined that Plaintiff would not be capable of handling her own financial affairs, that her ability to understand and remember simple one or two step job instructions, while fair, would be difficult for her on a sustained basis due to her substance abuse issues, and her abilities to sustain concentration and attention and to get along with others were decreased. *Id.*

Examining physician Dr. Danopulos reported on December 18, 2006, that Plaintiff presented with four major complaints which she alleged kept her from working including low back pain, right shoulder pain, right knee pain, and asthma with effort-related shortness of breath, that she last saw a physician two years ago, she did not drink and never did, and that she did not use drugs although she used crack cocaine for ten years and stopped using two years ago. PageID 305-14. Dr. Danopulos also reported that Plaintiff's lungs were clear, she had full ranges of motion of her upper and lower extremities, her right shoulder had normal but painful motions, her right knee had normal and painless motions, her spine was painless to pressure, her paravertebral muscles were soft and painless to pressure, and that her straight leg raising was normal. *Id.* Dr. Danopulos noted that Plaintiff got on and off the exam table without difficulty, squatting and arising from squatting triggered right knee pain, heel and toe gait was normal, that there were no neurological findings, and lumbosacral spine xrays were normal. *Id.* Dr. Danopulos also noted that his objective findings were lumbar spine arthralgias, right shoulder arthralgias, right knee arthralgias, history of asthma which could not be documented, and pes planus. *Id.* Dr. Danopulos opined that Plaintiff's abilities to perform any work-related activities

were affected by her bilateral pes planus which triggered pain in her right knee and lumbar spine when she walked and the right shoulder arthralgias plus her history of asthma. *Id.*

Examining psychologist Dr. Bonds reported on December 20, 2006, that Plaintiff graduated from high school, attended college for one year, was currently working part-time cleaning houses, previously worked at Hampton Inn in housekeeping and at Economy Linen, has not seen her physician for a few years, in the past went to Daymont Behavioral Health and participated in group therapy for two years, drank about forty ounces of beer on a daily basis, began drinking when she was twelve years old, in the past has used marijuana, Valium, blue tips, soapers, and crack, did crack on a daily basis for about fifteen years, last used in the summer of 2005, and that she has attended court-ordered treatment at NOVA House. PageID315-22. Dr. Bonds also reported that Plaintiff's mood seemed normal, her affect was broad and appropriate to thought content, she did not display any overt signs of anxiety, she was alert and oriented, she has some insight and understanding of her problems, seemed to recognize the negative effects of drug use on her life, was not showing much insight about the negative effects of alcohol and continued to drink excessively, and that she may need someone to manage funds to make sure they were spent appropriately. *Id.* Dr. Bonds identified Plaintiff's diagnoses as chronic post-traumatic stress disorder, alcohol dependence, cocaine dependence reported in full remission, and borderline intellectual functioning and he assigned Plaintiff a GAF of 55. *Id.* Dr. Bonds opined that Plaintiff's abilities with respect to relating to others, with respect to understanding, remembering, and following directions, and with respect to withstanding the stress and pressure associated with day-to-day work activities were moderately limited and her ability to maintain attention and concentration to perform simple repetitive tasks was not significantly limited. *Id.*

The record contains a copy of Plaintiff's treatment notes from Good Samaritan Crisis Center dated January 5, 2008, through November 20, 2008. PageID 329-58. Those records reveal Plaintiff's health care providers identified her diagnoses as alcohol dependence, cocaine dependence, post-traumatic stress disorder, and learning disorder NOS, that she saw a counselor and psychiatrist, and that over time, it was noted that she was staying sober. *Id.* Those notes also reveal that over time, Plaintiff reported that she continued to feel depressed, continued to have flash-backs and nightmares, that at one point she left NOVA House because she did not feel safe in the environment, and that Plaintiff was eventually referred to DayMont Behavioral Health. *Id.*

The record contains a copy of Plaintiff's treatment notes from DayMont West dated August 15, 2008, through October 6, 2009. PageID 379-92; 417-60. Those notes reveal that Plaintiff's health care providers identified her diagnoses as chronic post-traumatic stress disorder, panic disorder with agoraphobia, and adjustment disorder with mixed anxiety and depressed mood and they assigned her a GAF of 57. *Id.* Those notes also reveal that Plaintiff received treatment with a counselor and a psychiatrist and that over time she complained of depression, and flash-backs. *Id.*

The record contains a copy of a report from Crisis Care dated March 26, 2010. PageID 462-78. That report reveals that Plaintiff was a self-referral seeking mental health treatment, that her diagnoses were schizophrenia undifferentiated type, post-traumatic stress disorder, and alcohol dependence, and that her GAF was 44. *Id.* Plaintiff reported that she needed to get back to DayMont and back on her medications, reported hearing voices, had been in treatment in DayMont on three different occasions in 2001, 2006, and 2008, for a year each time, and that she needed help remaining alcohol and drug-free. *Id.* Plaintiff was referred to DayMont. *Id.*

An individual treatment plan dated April 5, 2010, from DayMont West reveals that Plaintiff sought mental health treatment reporting that she needed to get Social Security and a permanent house and that she wanted to attend group, AA, and anger management. PageID 479-82.

A Transfer/Discharge Summary from Crisis Care dated April 19, to June 24, 2010, reveals that Plaintiff was a self-referral seeking mental health treatment, she was discharged and linked with DayMont for treatment, her diagnoses were schizophrenia undifferentiated type, post- traumatic stress disorder, and alcohol dependence, and that her GAF was 44.  PageID 483-85.

An initial psychiatric evaluation from DayMont West dated June 26, 2010, reveals that Plaintiff reported she was getting more depressed, had become more socially isolated, had an essentially normal mental exam, and that her diagnoses were major depression recurrent with psychosis, and history of polysubstance abuse and that her GAF was 60. PageID 486-92.

Plaintiff alleges in her Statement of Errors that the Commissioner erred by failing to find that she satisfies Listing 12.05C. (Doc. 9).

A claimant has the burden of proving that his or her impairments meet or equal the Listings. *Bowen v. Yuckert,* 482 U.S. 319 (1987).  In order to meet the requirements of a listed impairment, the claimant must meet all of the elements of the listed impairment. *See, Hale v. Secretary of Health and Human Services,* 816 F.2d 1078, 1083 (6th Cir. 1987), *citing, King v. Heckler,* 742 F.2d 968, 973 (6th Cir. 1984) (lack of evidence indicating the existence of all the requirements of Listing 1.05C provides substantial evidence to support the Secretary's finding that claimant did not meet the Listing).  It is not sufficient to come close to meeting the

requirements of a Listing. *Dorton v. Heckler,* 789 F.2d 363, 367 (6th Cir. 1989) (Secretary's decision affirmed where medical evidence almost establishes a disability under Listing 4.04(D)).

> Listing 12.05 reads in part:
>
> *Mental Retardation and Autism:* Mental retardation refers to a significantly sub average general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22)....
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> ...
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;
> ...

20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.05.

The regulations require that the Commissioner evaluate medical opinion evidence and give reasons for the weight assigned to that evidence. See 20 C.F.R. § 404.1527. The reasons must be supported by the evidence in the record and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the medical opinion and the reasons for that weight. See *Id.*

In determining that Plaintiff does not satisfy Listing 12.05C, Judge Redmond noted that the record contains the results of IQ testing performed when Plaintiff was twelve years of age which reveled she had a verbal IQ of 79, a performance IQ of 68, and a full-scale IQ of 71. PageID 72. Judge Redmond also noted that examining psychologist Dr. Flexman reported in 1992, that Plaintiff's testing revealed a verbal IQ of 65, a performance IQ of 65, and a full-scale IQ of 63. *Id.*

While Judge Redmond did not reject the validity of Plaintiff's age twelve IQ test results, he did reject Dr. Flexman's test results noting, "Since it is possible to 'fake' poor IQ scores, it is

found that the IQ scores determined by Dr. Flexman are invalid." *Id.* However, in contrast to Judge Redmond's finding that it is possible to "fake" poor IQ scores, a review of Dr. Flexman's report reveals that Dr. Flexman, in fact, found that Plaintiff's IQ scores revealed that Plaintiff was "functioning within the mild range of retardation" and that such "appear[ed] to be an accurate reflection of her innate intellectual level of functioning." PageID 298. There is nothing in Dr. Flexman's report that indicates that he suspected that Plaintiff was "faking" or malingering. Further, there is no other medical evidence which supports a conclusion that Plaintiff was "faking" poor IQ test results in 1992. In other words, Judge Redmond's conclusion as to Plaintiff's 1992, IQ test results is not supported by the medical evidence. Further, Judge Redmond gave no reasons for his presumptive rejection of Plaintiff's earlier, age 12 IQ test results which arguably satisfy the IQ parameters of Listing 12.05C.

This Court concludes that the Commissioner's reason for rejecting Plaintiff's 1992 IQ test scores as reported by Dr. Flexman is not supported by substantial evidence. In addition, the Court concludes that the Commissioner's failure to give any reasons for presumably rejecting Plaintiff's age 12 IQ test scores denotes a lack of substantial evidence upon which his decision is based. *Cf., Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 243 (6th Cir. 2007).

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to remand the matter for rehearing or to reverse and order benefits granted. The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g). If a court determines that substantial evidence does not support the Commissioner's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*

*of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted); *see also, Newkirk v. Shalala,* 25 F.3d 316 (6th Cir. 1994).

The fourth sentence of 42 U.S.C. Sec. 405(g) directs the entry of a final appealable judgment even though that judgment may be accompanied by a remand order. *Sullivan v. Finkelstein,* 496 U.S. 617 (1990). The fourth sentence does not require the district court to choose between entering final judgment and remanding; to the contrary, it specifically provides that a district court may enter judgment "with or without remanding the cause for rehearing." *Id.*

This Court concludes that not all of the factual issues have been resolved and the record does not adequately establishes a plaintiff's entitlement to benefits. Specifically, the Court notes that there may be an arguable basis for the Commissioner to conclude that in spite of the reported IQ scores of record, Plaintiff nevertheless does not satisfy Listing 12.05C. Accordingly, this matter should be remanded for further administrative proceedings.

It is therefore recommended that the Commissioner's decision that Plaintiff is not disabled be reversed. It is also recommended that this matter be remanded to the Commissioner for further administrative proceedings.

January 15, 2013                                    *s/ Michael R. Merz*
                                                     United States Magistrate Judge


### NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and

Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).